[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The above-titled action arose out of a slip and fall incident that occurred on September 2, 1995, at a Stop Shop store located on Dixwell Avenue in Hamden, Connecticut. The plaintiff, Frederick Kroll (Kroll), brought suit against Stop Shop Companies, Inc. (Stop Shop), claiming that he was injured when he slipped and fell on a puddle of water. Stop 
Shop settled the lawsuit with Kroll for $10,000 in December 2000. Stop 
Shop now brings this indemnification claim against the third party defendant, JJ Maintenance, seeking to be indemnified in the amount of $10,000 plus attorneys fees.
Stop Shop filed a two-count third party complaint (complaint) seeking indemnification from JJ Maintenance. Count one of the complaint is a contractual indemnity claim, and count two is a common law indemnity claim. Stop Shop alleges that prior to September 2, 1995, JJ Maintenance entered into a contract with Stop Stop providing for the washing of the floors and maintenance of the Stop Shop store located on Dixwell Avenue. The contract contains an indemnification clause and also provides that JJ Maintenance would secure a general liability insurance policy covering the subject premises and name Stop Shop as an insured under the policy. Stop Shop additionally alleges that the injuries sustained by Kroll, as a result of his slipping and falling on a slippery substance on Stop Shop's premises, were proximately caused by the negligence of JJ Maintenance. Stop shop claims that JJ is, therefore, responsible under the terms of the contract to provide Stop 
Shop with a general liability insurance policy to cover the claim made by Kroll and to indemnify Stop Shop for any losses it may incur as a result of Kroll's claim.
Count two alleges that JJ Maintenance is liable to Stop Shop for all or part of Kroll's claim against Stop Shop because: (1) Kroll's injuries were proximately caused by the active negligence of JJ Maintenance; (2) JJ Maintenance's negligence was the sole and direct cause of Kroll's injuries; (3) Stop Shop had no knowledge of the negligence of JJ Maintenance, had no reason to anticipate it, and reasonably relied on JJ Maintenance not to be negligent; and (4) JJ Maintenance was in control of the situation causing Kroll's injuries to CT Page 8828 the exclusion of Stop Shop.
 JJ Maintenance denies all the material allegations of the third party complaint.
At trial, Stop Shop submitted the following exhibits: (1) a certified copy of Kroll's deposition testimony; (2) a copy of a letter written by Kroll and faxed to Ken Burrows at Stop Shop headquarters, dated October 2, 1995, regarding the slip and fall at Stop Shop; (3) a copy of Kroll's receipt from Stop Shop, dated September 1, 1995; (4) a copy of the amendment to the store floor cleaning and related services contract between Stop Shop and JJ Maintenance; (5) a copy of the release between Kroll and Stop Shop, dated December 7, 2000; and (6) a copy of a letter, dated December 6, 2000, from Attorney Michael Brandt to Attorney McCabe regarding depositions in preparation of the trial on the indemnification claim. The only witness to testify was Joseph Godoi, owner of the JJ Maintenance Co. The parties stipulated that the amount paid in settlement to the plaintiff was reasonable and that the attorney's fees for defense of the action amounted to $2,678.00.
DISCUSSION
Indemnification is "a claim for reimbursement in full from one on whom primary liability is claimed to rest. . . ." Crotta v. Home Depot, Inc.,249 Conn. 634, 641, 732 A.2d 767 (1999). A party may bring an indemnification claim based on the terms of an indemnity agreement." 24Leggett Street Ltd. Partnership v. Beacon Industries, Inc., 239 Conn. 284,306, 685 A.2d 305 (1996). "[A]llegations of contractual indemnification must be supported by the terms of the contract or the contract itself." (Internal quotation marks omitted.) Morel v. Unicco Service Co., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 307697 (December 4, 1995, Maiocco, J.). "Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." (Internal quotation marks omitted.)Tallmadge Bros., Inc. v. Iroquois Gas Transportation System, L.P.,252 Conn. 479, 495, 746 A.2d 1277 (2000).
Section ten of the contract between JJ Maintenance and Stop Shop states, in part: "a. Contractor agrees to procure and maintain public liability insurance as well as coverage for personal injury, property damage and blanket contractual liability . . . naming the Company as an Additional Insured. . . . d. Contractor will defend and indemnify the Company against any and all losses, liabilities, claims and costs (including legal fees and costs of litigation) arising out of CT Page 8829 Contractor's performance of its services, failure to perform such services per this contract or arising out of any other acts of the Contractor or its employees or agents, including claims by the Contractor's employees and agents." (Stop Shop, Exhibit 4.)
Stop Shop, relying on the indemnification clause in the maintenance contract with J Maintenance, argues that the sole issue before this court is "whether, based upon the deposition testimony and statement of . . . Kroll, it is reasonable to infer that the claim being made by . . . Kroll arose out of the Contractor's performance or arose out of any other acts of the Contractor [or] its employees or agents." (Stop 
Shop's Memorandum, pp. 3-4.) Stop Shop supports it argument by relying on Whetzel v. Stop Shop Company, Superior Court, Judicial district of New Haven at New Haven, Docket No. 371520 (April 14, 2000, De Mayo, J.), which is factually similar to the case now before the court and involves the same contract language. In Whetzel, the court concluded that after "[a] careful reading of the depositions that the injury suffered by the plaintiff arose out of the contractor's performance of its services. They spread water over the floor and left a wet surface for the plaintiff to transverse." Id. The court entered judgment for the third party plaintiff. Id.
JJ Maintenance argues that, for Stop Shop to prevail on its common law and/or contractual indemnity claim, Stop Shop must prove, by a preponderance of the evidence, that JJ Maintenance's agents created the hazard, the alleged puddle of water. (JJ Maintenance's Memorandum, pp. 1-2.) JJ Maintenance asserts that Stop Shop has failed to meet this burden and that "[t]he [c]ourt simply cannot conclude that the employees of JJ Maintenance had anything to do with creating the puddle of water in which the plaintiff slipped without engaging in guesswork, conjecture and surmise." (JJ Maintenance's Memorandum, p. 11.)
The court finds that the language of the indemnity clause is broad, therefore, the court agrees with Stop Shop that, if Kroll's injuries arose out of JJ Maintenance's performance of its services, then judgment must enter for Stop Shop. The indemnification clause does not require "that there be negligence on the part of [JJ Maintenance] for indemnification to be had." Whetzel v. Stop Shop Company, supra, Superior Court, Docket No. 371520.
The plaintiff testified in deposition that he went to the Stop and Shop store in Hamden around midnight in September, 1995 and picked up White Castle cheeseburgers. He was on his way to pay for the purchase when he was caused to fall by water on the floor. The plaintiff stated that he knew that the substance was water because it wet his clothing. He described his fall as a "major header." He stated that his feet went out CT Page 8830 from under him, he went forward, fell back, and landed on his elbow. At the time of the fall, there were people nearby who were cleaning the floors. The plaintiff stated that, although the people he saw were not actually working at the moment he saw them just after the fall, he knew they were the cleaning crew because they had the cleaning equipment with them. It appeared to the plaintiff that the cleaning crew was on a break.
Jose Godoi, owner of JJ Maintenance testified that he did not know about the plaintiffs accident until the lawsuit was filed. He, therefore, did not witness the accident. Mr. Godoi testified concerning the procedures used by his employees in cleaning the Stop and Shop stores. He said that the crew would arrive at midnight or later and work until 7 a.m. or later. He said that they would sweep before washing the floors. He said that a cleaning machine was used. The machine had brushes in front and a squeegie in back. Sometimes the machine would leave puddles, and, according to the witness, an employee would be on the side to mop up puddles that might collect because the squeegie would not pick up the water.
JJ Maintenance argues that Stop and Shop did not prove that the puddle of water upon which the plaintiff Kroll slipped and fell was caused by JJ Maintenance. The court disagrees and finds that, based on the evidence presented in his deposition, the plaintiffs injury arose out of the contractor's performance of its services.
CONCLUSION
Based on the foregoing, the court finds that Kroll's injuries arose out of JJ Maintenance's performance of its services, therefore, J 
Maintenance is contractually obligated to indemnify Stop Shop.[1]
Judgment may enter for Stop Shop to recover from JJ Maintenance the sum of $10,000 plus attorneys fees in the amount of $2,678.00,[2] for a total judgment of $12,678.00.
Elizabeth A. Gallagher, Judge